IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ELIZABETH M. CHAMBLESS                                                      PLAINTIFF

v.                                      CIVIL NO. 08-2024

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                              DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Elizabeth M. Chambless, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for period of disability and disability insurance benefits (DIB) under the provisions of Titles II of the Social Security Act (Act). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff protectively filed her current application for DIB on October 31, 2005, alleging an inability to work since April 10, 2001, due a right posterior cerebral artery aneurysm, status post craniotomy, a stroke, a back problem and depression. (Tr. 14, 66). For DIB purposes plaintiff maintained insured status through December 31, 2002. (Tr. 14). An administrative hearing was held on May 17, 2007. (Tr. 293-323). Plaintiff was present and represented by counsel.

By written decision dated July 30, 2007, the ALJ found that during the relevant time period plaintiff had an impairment or combination of impairments that were severe. (Tr. 16). However, after reviewing all of the evidence presented, she determined that plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 17). The ALJ found plaintiff retained the residual functional capacity (RFC) to lift and carry ten pounds occasionally, less then ten pounds frequently; to sit for six hours in an eight-hour work day; and to stand and walk for two hours out of an eight-hour work day. Due to left sided weakness and clumsiness, the ALJ found plaintiff was precluded from climbing scaffolds, ladders or ropes and working at unprotected heights or around dangerous machinery. Due to headaches and residual of the aneurysm, plaintiff could occasionally climb steps/ramps, stoop, bend, crouch, crawl, kneel and balance. The ALJ found plaintiff was limited to jobs that are learned by experience, involve variables and require little supervision for routine work but more supervision for non-routine work. (Tr. 17). With the help of a vocational expert, the ALJ determined plaintiff could perform other work as a receptionist, a telephone solicitor and a data entry clerk. (Tr. 22).

Plaintiff then requested a review of the hearing by the Appeals Council, which denied that request on February 28, 2008. (Tr. 3-6). Subsequently, plaintiff filed this action. (Doc. 1). Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (Doc. 8, 9).

II.     **Evidence Presented:**

An administrative hearing was held on May 17, 2007. (Tr. 293-323). At the time of plaintiff's date last insured she was forty-six years of age with a ninth education. (Tr. 98, 297).

The record reflects plaintiff's past relevant work consists of work as an apartment manager and a property manager. (Tr. 298-301, 304).

The pertinent medical evidence in this case reflects the following. On April 8, 2001, plaintiff was transferred to Memorial Hermann Hospital from an outside facility after being evaluated for severe onset headache beginning April 5, 2001. (Tr. 143-144, 166-196, 206). A CT scan revealed a subarachnoid hemorrhage. A four-vessel cerebral arteriogram revealed a right posterior communicating artery aneurysm. Plaintiff underwent surgery for clipping of the aneurysm. As a result of therapy, plaintiff developed some cardiac arrhythmias. Cardiology felt these arrhythmias were secondary to the use of the Swan-Ganz and dobutamine. Plaintiff was scheduled for a cardiac MRI upon discharge. Plaintiff remained neurologically and hemodynamically stable during her hospitalization. Plaintiff was discharged home on April 19, 2001. Discharge orders note plaintiff could start driving in one month and could return to work in two to three months. (Tr. 169).

On April 22, 2001, plaintiff was admitted into Memorial Hermann Hospital after experiencing a 24-hour progression of left-sided weakness and facial droop. (Tr. 138-142, 146-165, 207-211). Upon admission, plaintiff underwent a work-up for the cerebrovascular accident (CVA). Plaintiff was noted to have new left hemiparesis which was resolving as she presented. Cardiology was consulted for the possibility of cardiac etiology of the CVA. Transcranial Doppler was noted to be normal as was the majority of plaintiff's cardiac work-up. Dr. Dong H. Kim noted plaintiff's hemiparesis continued to improve while admitted. Plaintiff was discharged on April 26, 2001, with only mild left seventh nerve palsy noted.

On September 25, 2001, plaintiff reported on July 4th she fell and hit her head at the site of her previous craniotomy. (Tr. 197-205). Since that time, plaintiff had noticed a small elevated bump that was giving her a considerable amount of pain. On September 26, 2001, plaintiff underwent a removal of a foreign body at the site of her previous craniotomy. (Tr. 201-202). Following the procedure, plaintiff was returned to the one day surgery area for discharge later in the day.

On March 6, 2002, plaintiff underwent a CT scan of the brain which revealed the following.

> 1. Minimal communication hydrocephalus, minimally worse since the previous CT examination of 4/23/2001.
>
> 2. Focus decreased attenuation in the right posterior frontal white matter. This has been more prominent since the previous CT examination of 4/23/2001. While this problem represents a focus of encephalomalacia from an old ischemic insult or instrumentation can exclude a neoplasm. A follow up CT scan with IV contrast is recommendation for further evaluation, if clinically indicated.
>
> 3. Postoperative changes for treatment of a right-sided aneurysm.

(Tr. 114-115).

On June 20, 2002, upon referral by Dr. Kim, plaintiff underwent a consultative examination performed by Dr. Donald J. Russell. (Tr. 110-113, 117-121). Plaintiff was referred due to her complaints of fatigue, left-sided weakness and continued depression. Dr. Russell noted the question that had come up was whether plaintiff was having subclinical seizures. Plaintiff reported that following her hospitalization in April of 2001, she gradually improved to the point that she was able to resume most of her activities including driving. Dr. Russell noted plaintiff was having some residual right-sided headaches which sometimes occurred on a daily

basis but were not pulsating in character nor were they associated with nausea, vomiting or any visual disturbances. Plaintiff reported her left-sided clumsiness seemed to worsen as the day progressed. Plaintiff's husband reported plaintiff had never gotten over this, that she was forgetful and that she had a tendency to drag her leg later in the day. Plaintiff reported no actual alteration in her state of awareness or consciousness since her discharge from the hospital. Plaintiff's medication consisted of Zoloft, Xanax and estrogen. After examining plaintiff, Dr. Russell diagnosed plaintiff with left hemiparesis secondary to an old right posterior communicating (?) aneurysm. Dr. Russell opined plaintiff's condition was complicated by the emotional trauma associated with all the family illnesses and perhaps some lack of understanding from some of the other family members. Dr. Russell requested an electroencephalogram (EEG) although he was skeptical that plaintiff's issues represented seizures. If the EEG was normal, Dr. Russell stated plaintiff agreed she ought to go ahead and get a psychiatric opinion on just what medicine, if any, was appropriate for her.

On June 26, 2002, Dr. Russell's treatment notes indicate the EEG was okay and that plaintiff would see a "psych" for an opinion. (Tr. 113, 116).

Progress notes dated September 27, 2002, report plaintiff had an appointment with Dr. Graves at 10:00AM. (Tr. 126). At 10:45 AM plaintiff left, without being seen, stating she could not wait any longer as she needed to go pick up her daughter.

On January 12, 2006, Dr. Redd Robert, a non-examining, medical consultant, completed a RFC assessment stating that, prior to plaintiff's date last insured, plaintiff could occasionally lift or carry ten pounds, frequently lift or carry less than ten pounds; could stand and/or walk for at least two hours in an eight-hour workday; could sit for a total of about six hours in an eight-

hour workday; could push or pull unlimited, other than as shown for lift and/or carry; could occasionally climb, balance, stoop, kneel, crouch or crawl; and that no manipulative, visual, communicative or environmental limitations were evident. (Tr. 38-45). After reviewing all the evidence, Dr. Bill F. Payne affirmed Dr. Redd's assessment on July 6, 2006. (Tr. 137).

Medical records dated after her insured status expired report plaintiff sought treatment for back pain and surgery, bronchitis, depression, fatigue and jaw pain. (Tr. 122-125, 127-129, 130-134, 213-244, 246-290).

### III.   Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)- (f). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § 404.1520.

AO72A
(Rev. 8/82)

**IV.     Discussion:**

    **A.     Insured Status:**

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on December 31, 2002. Accordingly, the overreaching issue in this case is the question of whether plaintiff was disabled during the relevant time period of April 10, 2001, her alleged onset date of disability, through December 31, 2002, the last date she was in insured status under Title II of the Act.

In order for plaintiff to qualify for disability benefits she must prove that, on or before the expiration of her insured status she was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. *Basinger v. Heckler*, 725 F.2d 1166, 1168 (8th Cir. 1984). The medical evidence of plaintiff's condition subsequent to the expiration of plaintiff's insured status is relevant only to the extent it helps establish plaintiff's condition before the expiration. *Id. at* 1169.

    **B.     Subjective Complaints and Credibility Analysis:**

We now address the ALJ's assessment of plaintiff's subjective complaints during the time period in question. In disability determinations, credibility assessments are the province of the ALJ. *Onstead v. Sullivan*, 962 F.2d 803, 805 (8th Cir. 1992). This court will not substitute its judgment for that of the trier of fact, *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996), nor will we disturb the decision of any ALJ who seriously considers, but for good reason explicitly discredits, a claimant's testimony of disabling pain. *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir.

1993). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003). We believe the ALJ adequately evaluated the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), and conclude there is substantial evidence supporting the ALJ's determination that plaintiff's complaints were not fully credible.

Plaintiff alleges she continued to experience severe headaches and left-sided fatigue and weakness following her treatment for a brain aneurysm and resulting CVA. The record reflects in April of 2001, a four-vessel cerebral arteriogram revealed a right posterior communicating artery aneurysm. Plaintiff underwent surgery for clipping of the aneurysm. Plaintiff remained neurologically and hemodynamically stable during her hospitalization and was discharged home on April 19, 2001. Plaintiff was re-admitted on April 22, 2001, after experiencing a 24-hour progression of left-sided weakness and facial droop. Upon admission, plaintiff underwent a work-up for the cerebrovascular accident (CVA). Plaintiff was noted to have new left hemiparesis which was resolving as she presented. Dr. Kim noted plaintiff's hemiparesis continued to improve and she was discharged on April 26, 2001, with only mild left seventh nerve palsy noted.

Plaintiff sought treatment again in September of 2001, after reporting she fell on July 4th and hit her head at the site of her craniotomy. Since that time, plaintiff reported a small elevated

bump that was giving her a considerable amount of pain. On September 26, 2001, plaintiff underwent a removal of a foreign body at the site of her previous craniotomy.

Plaintiff did not seek treatment again until September of 2002, at which time she reported experiencing fatigue, left-sided weakness and continued depression. Dr. Russell examined plaintiff and assessed her with left hemiparesis secondary to the old aneurysm. Dr. Russell further noted plaintiff's condition was complicated by the emotional trauma associated with family illnesses and the lack of understanding of other family members. Because plaintiff had a normal EEG, Dr. Russell recommended plaintiff get a psychiatric consult. There is no evidence revealing plaintiff followed this recommendation. *Brown v. Barnhart*, 390 F.3d 535, 540-541 (8th Cir. 2004)(citations omitted)("Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits.")

Plaintiff alleges severe and disabling headaches since the time of her craniotomy in April of 2001. However, the record reveals in September of 2002, plaintiff reported that while she did have headaches she took over-the-counter medication to treat them. (Tr. 117). *See Harris v. Barnhart,* 356 F.3d 926, 930 (8th Cir.2004) (determining that claimant's use of nonprescription pain medication is inconsistent with allegation of disabling pain). Dr. Russell further noted plaintiff's headaches were not pulsating in character nor were they associated with nausea, vomiting or any visual disturbances. With the exception of the headache that preceded the craniotomy in April of 2001, there is no record that plaintiff sought treatment for headaches at the severity alleged during the relevant time period. In May of 2006, plaintiff denied headaches. (Tr. 219). Furthermore, at the hearing before the ALJ in May of 2007, plaintiff reported that the severity of her headaches had increased over the past couple of years which is well after the date

plaintiff's insured status expired. (Tr. 311). Based on the record as a whole, we find substantial evidence to support the ALJ's determination that plaintiff did not have disabling headaches prior to her date last insured.

Regarding plaintiff's complaints of left-sided weakness, the record reflects plaintiff reported left-sided weakness that gradually improved to Dr. Russell in September of 2002. At that time, plaintiff also reported she had been able to return to most of her activities. In May of 2006, plaintiff reported some left-sided weakness when she was up on her leg too long. (Tr. 219). We believe the ALJ adequately addressed plaintiff's left-sided weakness and that the RFC reflects what limitations this weakness caused plaintiff based on the record as whole.

With regard to plaintiff's alleged fatigue, in September of 2002, plaintiff reported experiencing fatigue to Dr. Russell. However, plaintiff did not complain of fatigue again during the relevant time period. Specifically, in September of 2005, plaintiff reported experiencing fatigue for several months. (Tr. 125). This 2005 allegation of fatigue was clearly after plaintiff's insured status had expired.

With regard to plaintiff's back pain and depression, the ALJ found that the medical evidence does not support plaintiff's allegations that these impairments were a contributing factor prior to her date last insured. After reviewing the evidence, we find substantial evidence supports the ALJ's determination regarding these impairments.

Plaintiff's subjective complaints are also inconsistent with evidence regarding her daily activities. The record reflects in September of 2002, plaintiff reported to Dr. Russell that following her craniotomy and CVA she had slowly improved and was able to return to most of her daily activities, including driving. The record further reflects on December 15, 2005, well after the

date last insured, plaintiff reported she was able to take care of her pet, take care of most of her personal care, prepare simple meals, do simple cleaning and laundry, drive a car, shop for food and clothes, pay bills, read, watch television and go out to dinner with others. (Tr. 88-95). This level of activity belies plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a plaintiff's subjective allegations of disabling pain prior to December 31, 2002. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996).

Therefore, although it is clear that plaintiff suffers with some degree of pain, she has not established that she was unable to engage in any gainful activity during the relevant time period. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning her daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

    **C.**    **RFC Assessment:**

Plaintiff also contends that the ALJ erred in finding that she maintained the RFC to perform sedentary work with limitations. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). The United States Court of Appeals for the Eighth Circuit has also stated that a "claimant's residual functional capacity is

a medical question," *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam ), must support the determination of the plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Nevland v. Apfel*, 2 04 F.3d 853, 858 (8th Cir. 2000). Therefore, in evaluating the plaintiff's RFC, *see* 20 C.F.R. § 404.154599(c), while not limited to considering medical evidence, an ALJ is required to consider at least some supporting evidence from a professional. *Cf. Nevland v. Apfel*, 204 F.3d at 858; *Ford v. Secretary of Health and Human Servs.*, 662 F. Supp. 954, 955, 956 (W.D. Ark. 1987) (RFC was "medical question,"and medical evidence was required to establish how claimant's heart attacks affected his RFC).

In the present case, the ALJ considered the medical assessments of examining agency medical consultants, plaintiff's subjective complaints, and her medical records. Plaintiff's capacity to perform this level of work is supported by the fact that plaintiff's treating and examining physicians placed no restrictions on her activities during the relevant time period that would preclude performing the RFC determined. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). Based on the record as a whole, we find substantial evidence to support the ALJ's RFC determination.

**D.     Hypothetical Proposed to Vocational Expert:**

Plaintiff also contends that the hypothetical question proposed to the vocational expert did not encompass all of plaintiff's limitations. After thoroughly reviewing the hearing transcript along with the entire evidence of record, we find that the hypothetical the ALJ posed to the

vocational expert fully sets forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. *See Goff v. Barnhart,* 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, we find that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that plaintiff's impairments do not preclude her from performing other work as a receptionist, a telephone solicitor and a data entry clerk . *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### F.     Fully and Fairly Develop the Record:

We reject plaintiff's contention that the ALJ failed to fully and fairly develop the record. While an ALJ is required to develop the record fully and fairly even when a claimant has an attorney, *See Freeman v. Apfel,* 208 F.3d 687, 692 (8th Cir.2000) (ALJ only must order consultative examination when it is necessary for an informed decision), the record before the ALJ contained the evidence required to make a full and informed decision regarding plaintiff's capabilities prior to her date last insured. *See Strongson v. Barnhart,* 361 F.3d 1066, 1071-72 (8th Cir.2004) (ALJ must develop record fully and fairly to ensure it includes evidence from treating physician, or at least examining physician, addressing impairments at issue).

### V.     Conclusion:

Based on the foregoing, we recommend affirming the ALJ's decision and dismissing plaintiff's case with prejudice. **The parties have ten days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact.**

-14-

**The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 10th day of March 2009.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE